Gaston, Judge,
 

 delivered the opinion of the court;
 

 It is conceded in the argument of the case, and is clearly established by authorities, that a guardian appointed by by the Court of Chancery, may, by the order of that court rightfully sell the personal property of his ward. The act of 1762, (c> 69,) after reciting “ that the greatest part of the estates in this province “belonging to orphans are of so inconsiderable value, “that an application to the Court of Chancery in many “ Instances will occasion an expense, which the profits of “ them are not sufficient to defray, and that it has been “found by experience, that the court of each respective “ county, exercising the power of regulating the educa“tion of orphans, and the management of their estates, “ have proved of singular service to them,” proceeds in the fifth section to enact “ that the Superior Courts and “ Courts of Pleas and Quarter Sessions, within their rc- “ spective jurisdictions, have, and shall
 
 huye full
 
 power “ and authority from time to time, to take cognizance of “
 
 all
 
 matters concerning orphans and their estates;” aml in the last section provides “that nothing in this act “ contained shall bo construed to restrain or abridge the “ power of the Court of Chancery, in any matter or thing “ relating to orphans and their estates.” The enacting words of this Statute are large enough to confer, ami the preamble and the proviso above mentioned, seem clearly to indicate an intention to confer, on the courts above mentioned an authority respecting all matters concerning orphans, and the estates of orphans co-extcnsivc with that which belonged to the Court of Chancery;
 
 *281
 
 and an opinion favorable to this Construction lias bren before intimated by this court, in the case of
 
 West
 
 v.
 
 Kitrell,
 
 1
 
 Hawks
 
 493. Unless therefore, something can be found in the body of the act inconsistent with the in-terprctation, to which we are thus conducted or restrictive of it with respect to certain subjects, this must be pronounced to be a true exposition of the grant of power. It is insisted that the 10th, 11th and 12th sections of the act contain enactments which are inconsistent with the supposition, that the court to which this general grant was made, derived authority from it to order or to sanction
 
 a
 
 sale
 
 of slaves
 
 by the guardian. The 10th section enacts, that the guardian shall, hy order of the Superior or Inferior Court, cause to be sold the perishable estate of his ward, (except in the instances thereinafter mentioned,) at public sale after advertisement for twenty days giving six months credit upon good security. The 11th enacts that where the orphan has lands and a sufficient number of slaves to cultivate and improve them, such slaves,
 
 urdess otherwise ordered by the Superior or Inferior Court,
 
 shall be employed on these lands, and all horses, cattle, hogs and sheep shall be kept on the lands until the orphan comes of age ; and the 12th provides that where such stock grow too numerous, or it shall be to the advantage of the ward, the guardian may sell by order of court such part of it as the court may think fit. And it is argued that the limited grants of power conferred by those sections to permit a sale of the perishable part of an orphan's estate, are repugnant to and inconsistent with the supposed general grant of a like power over every part, even the more permanent and valuable part of an orphan’s personal estate. But are these sections to be regarded as conferring powers on the courts ? Are they not rather directory to the guardian, indicating the course which he ought to pursue in the management of the estate confided to his care ? It may indeed be inferred and very properly inferred from the silence of the act with respect to the sale of slaves, that the la\v makers did not contemplate such a sale as being generally for the interest of the infant, or consistent with the duty of
 
 *282
 
 tlie guardian. The omission to point out any case in which slaves might be sold, may well be regarded as . . ° ,. imposing on the guardian the necessity of supporting- an. application for permission to sell them by plenary proof that the act was required by the interests of his ward, and imposing on the court the duty of strictly scrutinising such an unusual application. But it would he a forced construction to consider these directions as abridging the full Chancery powers over the estate of the orphan distinctly conferred by the statute.
 

 By the act of 1789,
 
 fe.
 
 312
 
 §
 
 5,) it is enacted that •When a guardian shall have notice of any debt against-the estate of his ward, he may obtain an order of court for the sale of so much and such part of the personal or real estate of his ward as the court shall deem
 
 proper;
 
 that the same shall be sold on credit, and the proceeds in the hands of the guardian shall be liable in the same manner as assets in the hands of an Executor after a
 
 scire facias;
 
 and that no execution shall be levied on the property of the ward, until twelve months after judgment obtained. ¥e are unable to collect from this act any distinct legislative intent restrictive of the right of the guardian to sell personal property under the sanction of a court of Chancery, or of the courts to which a concurrent jurisdiction in relation to orphans and their estates lias been given by the act of 1762. Every provision in it may consist with the existence of such an authority to sell personal property. It empowers the court to designate whether real or personal estate shall be sold, it provides a mode heretofore unknown, whereby the proceeds may be reached in the hands of the
 
 guardian;
 
 and it makes a Salutary regulation to prevent a sale of the wards property by execution during a period in which the guardian can covcniently make sale on credit of such part of it as shall be most expedient, and collect the proceeds of the sale.
 

 The subsequent acts of the Legislature which have been referred to in the argument, furnish no aid in es - tablishing the proper construction of the act of 1762.—
 
 *283
 
 They state that doubts have prevailed bow far the powers of the courts extend, aud out of abundant caution, make enactments to conter certain powers if they do not already exist, or to regulate their exercise if theretofore conferred.
 

 We find ourselves constrained to say, that the county courts do possess the authority to order a sale by a guardian of the slaves of his ward, and that a fair
 
 bona ficle
 
 purchaser under such a sale may acquire a valid title to
 
 the
 
 property. Such sales however are so unusual— the occasions which would justify them are so rare— the dangers of imposition on the court by misrepresentations of the guardian and of corrupt combination between him and the ostensible purchasers so obvious, that the vigilance of Courts and Jurors should be exerted in detecting any fraud which may infect the proceeding.
 

 Whether there has been any unfairness in this sale, has not been submitted to the jury. We hold this to bp an all important enquiry, and for that purpose shall reverse the judgment and award a new trial.
 

 Per Curiam — Judgment reversed.